## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

JAMES R. SATTERFIELD,       )
         )
       **Plaintiff,**    )
v.            )      **Case No. CIV-20-269-RAW-SPS**
         )
KILOLO KIJAKAZI,[1]    )
**Acting Commissioner of the Social**  )
**Security Administration,**    )
         )
      **Defendant.**    )

## REPORT AND RECOMMENDATION

The claimant James R. Satterfield requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-two years old at the time of the most recent administrative hearing (Tr. 154, 720). He completed high school and has previously worked as an appliance line assembler and appliance line repairman (Tr. 181, 710). The claimant alleges inability to work since December 10, 2010, due to back pain; scoliosis; lumbar disorder; pain in his legs, knees, and ankles; calcium deficiency; teeth breaking off; joint disease; and degenerative disc disease (Tr. 180).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on June 13, 2011. His applications were denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 15, 2013 (Tr. 9-18). The Appeals Council denied review, but this Court reversed and remanded the decision on September 29, 2015, in Case No. CIV-14-218-FHS-SPS (Tr. 470-485). On remand, ALJ Christopher Hunt held a second administrative hearing and again determined the claimant was not disabled in a written opinion dated August 21, 2017 (Tr. 415-429). The Appeals Council again denied review, and this Court again reversed and remanded the

decision on March 25, 2019, in Case No. CIV-17-423-RAW-KEW (Tr. 784-801). On remand again, ALJ Clifford Shilling held a third administrative hearing and again determined the claimant was not disabled in a written decision dated June 5, 2020 (Tr. 700-712). The Appeals Council again denied review, so ALJ Shilling's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found at step four that the claimant could perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), except that he could only occasionally climb ramps/stairs, stoop, kneel, crouch, crawl, reach on a bilateral basis, and overhead reach on a bilateral basis; and that he could never climb ladders/ropes/scaffolds (Tr. 705). Additionally, he found the claimant could perform simple, repetitive, and routine tasks with only occasional contact with coworkers or supervisors and cursory and superficial contact with the general public, as well as working with things rather than people (Tr. 705). The ALJ then concluded at step five that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, produce sorter, shipping weigher, and fruit distribution conveyor operator (Tr. 710-711).

### Review

The claimant alleges that the ALJ erred in: (i) evaluating the consistency of his statements as to his pain in relation to his impairments, and (ii) accounting for all his limitations in formulating the RFC. The undersigned Magistrate Judge agrees with the

claimant's second contention, and the case should be remanded.

The ALJ found the claimant had the severe impairments of degenerative disc disease, scoliosis, anxiety disorder, and depressive disorder, as well as the nonsevere impairment of hypertension (Tr. 702-703). The relevant medical evidence reveals that the claimant largely received treatment at the Wellness Clinic of Roland. Though not detailed, these regular treatment notes also reflect the claimant consistently struggled with anxiety and depression, as well as insomnia (Tr. 257-273, 279, 284-285, 300, 302, 308-326, 374-411). Additionally, the claimant received treatment at Frist Medical Clinic with Dr. N. Van Hoang, who noted the claimant had struggles with affording medications (Tr. 320). The claimant visited Tom A. Wood Chiropractic, Inc., from October 2009 through June 2011. Though somewhat difficult to decipher, these notes also reflect the claimant's reports of pain and depression (Tr. 242-246).

On October 1, 2010, Dr. George Howell completed a medical source statement (MSS) as to the claimant's physical impairments, in which he indicated that the claimant could lift/carry up to ten pounds frequently and up to twenty pounds occasionally, that he could sit fifteen minutes at a time for up to two hours total, stand fifteen minutes at a time for up to two hours total, and walk one hour at a time for up to two hours total (Tr. 294-295). Additionally, he indicated that the claimant could stand/walk two hours total in an eight-hour workday (Tr. 294). He checked boxes that the claimant could use his hands, but not his feet for repetitive movement (Tr. 295). Furthermore, he indicated that the claimant could frequently reach above head; occasionally bend, stoop, and kneel; and never squat, crawl, climb, or crouch (Tr. 295). Finally, he indicated that the claimant could never

be exposed to unprotected heights, only occasionally be around moving machinery, and that he could frequently be exposed to marked temperature changes and drive automotive equipment (Tr. 295). He noted the claimant experienced severe pain, would need to take unscheduled breaks, and would be absent more than four days a month (Tr. 296).

On August 16, 2011, Dr. Mohammed Quadeer conducted a physical examination of the claimant, during which he observed that the claimant's cervical spine was tender with limited range of motion and muscle spasms, as well as the lumbar-sacral spine being tender at L4-5 with limited range of motion associated with muscle spasms (Tr. 250-255). His straight leg raise test was negative (Tr. 250, 255). Dr. Quadeer assessed the claimant with low back pain likely due to degenerative disc disease, cervical spine pain, knee pain, and calcium deficiency with teeth breaking off (Tr. 250). On September 2, 2011, the claimant was assessed with chronic low back pain, anxiety and depression, insomnia, and poor dentation, and was noted to have a *positive* straight leg raise test with the left greater than the right (Tr. 257). He had another positive straight leg raise test on December 21, 2012, left greater than right (Tr. 374).

On January 31, 2012, consultative examiner Theresa Horton, Ph.D., conducted a diagnostic interview and mental status examination. Upon examination, she remarked that "[h]is presentation is somewhat odd, his pace is slow, and it is often difficult to keep him on track" (Tr. 352). She reiterated that his thought processes were logical, organized, and goal directed, but that he often became tangential and had to be prompted to stay on task, and that it took him several moments to get to his point (Tr. 352). She further noted that his concentration was poor, although he had average intelligence and good effort (Tr. 352).

He had appropriate judgment, but poor insight (Tr. 353). She assessed him with generalized anxiety disorder, panic disorder, dysthymia early onset, and major depressive disorder, recurrent, moderate to severe (Tr. 353). Her prognosis was that the claimant appeared capable of understanding and remembering simple and complex instructions and tasks, but that his pace was so slow he would likely have management problems, particularly with more complex tasks, and also that his concentration was so poor it would interfere with his productivity. In conclusion, she stated, "He does not appear capable of adequate social and emotional adjustment into most occupational and social settings at this time" (Tr. 353).

On November 14, 2016, Dr. William Willis completed an MSS as to the claimant's physical impairments. He indicated that the claimant could lift/carry up to five pounds frequently and up to ten pounds occasionally, and that he could sit fifteen minutes at a time for up to three hours and stand/walk fifteen minutes at a time up to two hours each, for a total combined stand/walk time of three hours (Tr. 680-681). In support, he cited the claimant's chronic back and neck pain (Tr. 681). He also indicated that the claimant could use his hands but not his feet for repetitive movement (Tr. 681). He limited the claimant to occasional bending and reaching above the head but found he could never perform other postural movement (Tr. 681). Like Dr. Howell, he indicated the claimant had severe pain, and that he would be absent from work four or more days per month (Tr. 682).

Dr. Kenneth Wainner reviewed the medical record and determined that the claimant could perform medium work with no additional limitations (Tr. 341-347). State reviewing physician Carolyn Goodrich, Ph.D., found the claimant had mild restriction of activities of

daily living, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, with no episodes of decompensation (Tr. 364). She opined that he was markedly limited in the usual three areas—the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public (Tr. 366-369). She concluded that he could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that he could not relate to the general public (Tr. 370).

On December 27, 2019, Dr. Harold DeLaughter, D.O., conducted a consultative examination of the claimant (Tr. 913). He noted the claimant had decreased range of motion of the spine, negative straight leg raise tests, and weak heel/toe walking bilaterally (Tr. 914-918). He stated that the claimant ambulated with an unstable gait at a decreased speed without use of assistive devices, and nearly fell during his attempts at heel/toe walking (Tr. 914). He assessed the claimant with anxiety, mood disorder, depression, history of a concussion with loss of consciousness at fourteen, degenerative disc disease of the lumbar and cervical spine, scoliosis of the lumbar spine, and reported lumbar cervical spine stenosis (Tr. 914). He likewise completed a physical MSS statement, in which he indicated, *inter alia*, that the claimant could lift/carry up to ten pounds frequently and up to twenty pounds occasionally, due to back pain with history of degenerative disc disease and reported spinal stenosis (Tr. 919). Additionally, he indicated that the claimant could sit three hours at a time up to six hours in an eight-hour workday, stand twenty minutes at a time up to one hour in an eight-hour workday, and walk thirty minutes at a time up to one

hour (Tr. 920). He indicated that his assessment applied to 2019 and would last for twelve consecutive months (Tr. 924).

On January 15, 2020, Dr. Larry Vaught, Ph.D., conducted a mental status examination of the claimant (Tr. 930-932). He indicated that the claimant's affect was mildly restricted; that he had difficulty going into crowded places; and that he was mildly slowed in the area of concentration, persistence, and pace, although abstraction and basic judgment appeared intact (Tr. 932). He indicated that the claimant had marked limitations in the ability to interact appropriately with the public, moderate limitations in the ability to understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with supervisors, interact appropriately with co-workers, and respond appropriately to usual work situations (Tr. 933-934).

In his written opinion at step four, the ALJ thoroughly summarized the claimant's testimony as well as most of the medical evidence in the record. As to Dr. Howell, the ALJ summarized his treatment notes indicating repeated in-person physical examinations, tenderness, and positive straight leg raise tests but appeared to discredit them because Dr. Howell indicated he wanted more detailed studies done, and further asserted without support that Dr. Howell must have relied on the claimant's subjective complaints despite these examinations (Tr. 706). He found the claimant's statements inconsistent with the record, seemingly relying on notes where the claimant reported an inability to pay, in contrast with times when he could afford medication and the lack of indication he sought access to low cost or no cost treatment (Tr. 707). He assigned some weight to the state

reviewing physician opinion, but found the claimant had additional limitations.  As to the opinions of Dr. Howell, Dr. Quadeer, Dr. Willis, and Dr. Horton, he assigned their opinions little weight.  He gave Dr. DeLaughter's opinion some, but not controlling weight.  Finally, he gave Dr. Vaught's opinion great weight (Tr. 708-710).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."[3]  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added] (*citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995)).  Those factors are:  (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Watkins v. Barnhart,* 350 F.3d 1297, 1300-1301 (10th Cir. 2003) (*citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted)).  Here, the ALJ failed to meet this standard.  Indeed,

---

[3] Here, the claimant's application for Title XVI benefits was filed on February 11, 2014.  The undersigned Magistrate Judge recognizes that for claims filed on or after March 27, 2017, medical opinions are evaluated under a different standard pursuant to 20 C.F.R. § 416.920c, which is not applicable here.

it appears the ALJ discredited each of the in-person examinations (treating and consultative) separately while ignoring how they all *supported* each other as to the claimant's limitations with regard to lifting/carrying *and* sitting/standing/walking, as well as postural limitations, the need for breaks, and his pain. It was error for the ALJ to "pick and choose" his way through the evidence in order to avoid finding the claimant disabled. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (citation omitted); *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") (citation omitted).

Since the ALJ failed to conduct the appropriate analysis regarding the opinion evidence in the record, his RFC thus fails to account for *all* the evidence in the record. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot

adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski*, 2013 WL 4849101, at *5.

In light of the number of remands that have already occurred in this case, as well as the length of time this case has been pending, the undersigned Magistrate Judge "acknowledges Claimant's request for a remand with instructions to award benefits," and "declines to remand with an award instruction on this occasion but reserves the right to do so in any future appeal should the Commissioner fail in the execution of her obligation under the law as blatantly as was done in this latest decision." *Wilkerson v. Colvin*, 2014 WL 1217768, at *4 (E.D. Okla. Feb. 28, 2014). *But see Wilkerson v. Colvin*, 2016 WL 4530625, at *2 ("Here, the Social Security Administration has been given numerous opportunities to properly evaluate the same issue . . . This has taken ten years. . . . Under these circumstances, the undersigned Magistrate Judge finds that additional fact finding would only serve the purpose of delay of the receipt of benefits, and that a ten-year delay involving three appeals to this Court was sufficient time to allow the Social Security Administration to properly adjudicate the Plaintiff's disability application."), *affirmed and adopted by Wilkerson v. Colvin*, 2016 WL 4532119 (E. D. Okla. Aug. 29, 2016) (slip op.).

Because the ALJ failed to properly evaluate the evidence available in the record, the

decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of February, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**